# BERANBAUM MENKEN LLP

80 PINE STREET, 33RD FLOOR

NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616

FACSIMILE: (212) 509-8088

WWW.NYEMPLOYEELAW.COM

JOHN A. BERANBAUM <sup>Δ</sup>
BRUCE E. MENKEN
JASON J. ROZGER <sup>Δ</sup>
GRACE CRETCHER
SCOTT SIMPSON

<sup>Δ</sup> ALSO ADMITTED NJ

November 12, 2015

**By ECF and First Class Mail**

The Honorable Paul A. Crotty, U.S.D.J.
United States District for the Southern District of New York
500 Pearl Street, Chambers 1350
New York, NY 10007

RE: *Sternberg v. New York City Health and Hospitals Corp.*, 14 Civ. 01003 (PAC)

Dear Judge Crotty:

  This firm represents Plaintiff in the above-captioned matter, and I write pursuant to Rules 1(A) and 3(D) of Your Honor's Individual Practices to request a pre-motion conference for the purpose of setting a briefing schedule for Plaintiff's anticipated motion for summary judgment, as well as a corresponding adjournment of the recently-set final pretrial conference and trial dates.

  This is a straightforward case of unjustifiable disability discrimination. Not only has each and every one of Defendant's witnesses functionally conceded as much during his or her deposition, but Defendant itself has also impliedly conceded as much by failing to offer even a *single* credible defense to Plaintiff's claims – whether factual or legal – at any point over the course of over a year of comprehensive, extended settlement negotiations.

  Rather than contradicting Plaintiff's allegations, or offering any affirmative defense to them whatsoever, Defendant's witnesses have simply engaged in a long process of attempting to

pass the buck and shift the blame in a transparent attempt to leave Plaintiff with no living individual actor to blame for his unlawful disability-based suspension and termination by Defendant. Unfortunately for Defendant, however, neither federal, state, nor local anti-discrimination law requires Plaintiff to identify such an individual, and no defense witness has provided any explanation for why Plaintiff was suspended or terminated, except for his hepatitis C. Given this total lack of contradictory evidence in the record, combined with the admissions made by multiple employees of Defendant during their depositions that Plaintiff was *indeed* both suspended and terminated pursuant to his medical condition and the perception that he was disabled,[1] this is an ideal case for resolution on summary judgment as to liability.

Prior to the August 21, 2015 substitution of Defendant's counsel Yuval Rubenstein, for his colleague Don Nguyen, Plaintiff and Defendant had been engaged in extended but cordial and productive settlement discussions. In June and July, I spoke with Mr. Nguyen and made clear that the difference in the parties' settlement positions was not large. Mr. Nguyen advised

---

[1] *See, e.g.*, Ex. A (Barbara Marrero Deposition Excerpts) at 25:2-13 ("Q: What did [Mr. Vidro] tell you prior to you signing it, as far as you know? A: He told me that there was a particular employee who failed to go to O.H.S., that he had hepatitis C and he failed to go to O.H.S. Therefore, it's a condition of employment which falls under my jurisdiction and he needed to be separated from employment. Q: Did you come to learn who made the decision to terminate Dr. Sternberg's employment? A: The decision was made through Mr. Vidro."), 26:8-14 ("Q: Did you feel comfortable signing this document? A: It seemed straightforward based on the fact that you have to have an annual clearance, medical clearance, and that is a contingency of employment. I didn't question it further than that."), 35:4-24 ("Q: So upon receipt of the doctor's letter, Ms. Marrero, why didn't you forward it to O.H.S.? A: Because he was the accommodations officer, I wasn't. Q: Mr. Vidro? A: Yes. Q: So because it was not part of your job duties, you gave it to Mr. Vidro, because it was part of his job duties? A: It was because he was handling the accommodation. Q: Did you follow-up to make sure that Mr. Vidro sent the doctor's note over to O.H.S.? … A: No. Q: Why not? A: I didn't. Q: Is that because you figured that he would do it; right? A: Yeah."), 54:19-20 ("He didn't go to O.H.S., so you gotta terminate."); Ex. B (Lawrence Bailey Deposition Excerpts) at 82:18-22 ("Q: What did Dr. Sternberg tell you? A: That H.H.S. says that he has to go to his physician and manage his hepatitis and that he cannot see patients – that there's only a certain category of patients that he can see."), 83:18-25 ("Q: You then spoke to Dr. Redwood? A: Yes. Q: What did he tell you? A: He told me about the SHEA guidelines and that he could manage it. It's a matter of going to his private physician and doing the protocol to get the blood tier down to acceptable level."), 85:22-25 ("So I was surprised where [Dr. Sternberg's hepatitis C] was at a point where he had to be relieved of duty and the fact that he told me that H.R. knew about this for years."), 103:4-9 ("Dr. Redwood did say that it is manageable with medical intervention from a private physician and he said it's a matter of him getting done whatever has to be get done with his private physician, get his blood tiered down and return to duty."), 106:18-107:2 ("Q: What did Dr. Redwood say during the meeting? A: He just kept referring to the SHEA guidelines, and he wasn't quite sure of the levels of – what the SHEA guidelines said in terms of what can be done or can't be done, but he was just clear that once the blood level received a certain tier, then the physician can't see patients, or there's only certain things they can do.").

that he planned on asking Your Honor to assign this case to a Magistrate Judge for further settlement discussions. Plaintiff therefore hoped that the parties' cordial and productive settlement efforts would continue once Mr. Rubenstein had sufficient time to review the case and get up to speed. On October 16, 2015, I spoke with Mr. Rubinstein and he indicated Defendant was reluctant to mediate or request assignment to a Magistrate Judge but was somewhat unclear about Defendant's position. Thus, although Plaintiff is and has always been fully prepared to vindicate his claims at trial if necessary, Defendant's counsel's unequivocal rejection of any further settlement attempts and request that the Court set a trial calendar at the pretrial conference on November 9, 2015 took Plaintiff's counsel by complete surprise. As a result, Plaintiff's counsel was unprepared to raise Plaintiff's intention to make a motion for summary judgment at the conference, as I needed to consult with our client regarding how to proceed given Defendant's new and unexpected perspective on the futility of any future settlement negotiations.

      Accordingly, based on the foregoing – and in the interest of judicial economy, given that the factual record in this case is completely devoid of any evidence that would create a disputed issue of material fact as to the legitimacy of Plaintiff's discrimination claims – Plaintiff respectfully requests that the Court set a briefing schedule for Plaintiff's motion for summary judgment as to liability and adjourn the February 16, 2016 trial date set three days ago at the conference on November 9, 2015 until after the Court rules on Plaintiff's motion.

      Respectfully submitted,

      Bruce E. Menken

BEM:gcc

3