14 Civ. 1003 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOUGLAS M. STERNBERG,

Plaintiff,

- against -

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Yuval Rubinstein*
*Tel: (212) 356-2467*
*Matter No. 2014-008195*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 4

ARGUMENT ......................................................................................................... 4

POINT I

       PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A
       MATTER OF LAW ON HIS "REGARDED AS" CLAIM ..................................... 5

       A.    The Applicable Legal Framework ................................................. 5

       B.    Plaintiff Is Not a "Qualified Individual" ....................................... 6

               1.    Plaintiff Became Unable to Perform the Essential
                     Functions of the Job ................................................. 6

               2.    Plaintiff Posed a Direct Threat to the Health and
                     Safety of Others ....................................................... 8

       C.    Plaintiff Cannot Demonstrate That Defendant Was
           Motivated by Discriminatory Intent ............................................. 12

               1.    Plaintiff's Suspension and Termination Were
                     Made On The Basis of Plaintiff's Conduct, Not
                     His Underlying Medical Condition ............................ 12

               2.    Statements Made by Defendant's Employees Do
                     Not Demonstrate Discriminatory Animus ................ 14

       D.    Defendant's Legitimate Reasons For Plaintiff's
           Suspension and Termination Were Not Pretextual ....................... 15

       E.    Plaintiff Fails To Demonstrate That He Was Subjected
           to Intentional Discrimination Under the SHRL and
           CHRL ....................................................................................... 18

**Page**

POINT II

      PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A
MATTER OF LAW ON HIS REASONABLE
ACCOMMODATION CLAIM ............................................................................ 19

      A.   Plaintiff Misstates the Applicable Legal Standard......................................... 19

      B.   Plaintiff's Proposed Accommodations Are
Unreasonable and Would Impose an Undue Hardship
Upon Defendant ....................................................................................... 20

CONCLUSION .................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Adm'r v. City of Chicago*,
    174 Fed. Appx. 342 (7th Cir. 2006)......................................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................................4

*Borkowski v. Valley Cent. Sch. Dist.*,
    63 F.3d 131 (2d Cir. 1995).........................................................................21, 24

*Bradley v. University of Texas M.D. Anderson Cancer Center*,
    3 F.3d 922 (5th Cir. 1993) ........................................................................11, 23

*Bragdon v. Abbott*,
    524 U.S. 624 (1999)........................................................................................10

*Burroughs v. City of Springfield*,
    163 F.3d 505 (8th Cir. 1999) ...........................................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..........................................................................................4

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998)....................................................................21, 22, 24

*Davis v. New York City Health & Hosps. Corp.*,
    508 Fed. Appx. 26 (2d Cir. 2013).....................................................................22

*Doe v. University of Md. Medical Sys. Corp.*,
    50 F.3d 1261 (4th Cir. 1995) .....................................................................11, 17

*Donahue v. CONRAIL*,
    224 F.3d 226 (3d Cir. 2000)............................................................................11

*Graves v. Finch Pruyn & Co.*,
    353 Fed. Appx. 558 (2d Cir. 2009).....................................................................23

*Graves v. Finch Pruyn & Co.*,
    457 F.3d 181 (2d Cir. 2006)............................................................................18

*Howard v. City of New York*,
    62 F. Supp. 3d 312 (S.D.N.Y. 2014)....................................................................19

*Hunt v. Cromartie*,
    526 U.S. 541 (1999)....................................................................................4, 16

**Cases**                                                                        **Pages**

*Jacobsen v. New York City Health & Hosps. Corp.*,
   22 N.Y.3d 824 (2014) ...................................................................................19

*Kinneary v. City of New York*,
   601 F.3d 151 (2d Cir. 2010)............................................................................5

*Krasner v. City of New York*,
   580 Fed. Appx. 1 (2d Cir. 2014) ..............................................................13, 19

*Estate of Mauro by & Through Mauro v. Borgess Med. Ctr.*,
   137 F.3d 398 (6th Cir. 1998) ........................................................................11

*McDonnell Douglas v. Green*,
   411 U.S. 792 (1973).......................................................................................5

*McDonnell v. Schindler Elevator Corp.*,
   618 Fed. Appx. 697 (2d Cir. 2015) ................................................................18

*McElwee v. County of Orange*,
   700 F.3d 635 (2d Cir. 2012)....................................................................13, 23

*Michael v. City of Troy Police Dep't*,
   2015 U.S. App. LEXIS 21546 (6th Cir. Dec. 14, 2015)....................................10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)...........................................................................18

*Mobley v. Madison Square Garden LP*,
   No. 11-8290 (DAB), 2012 U.S. Dist. LEXIS 85467 (S.D.N.Y. June 14, 2012) ......6

*Mulloy v. Acushnet Co.*,
   460 F.3d 141 (1st Cir. 2006)..........................................................................22

*Nurse v. Lutheran Med. Ctr.*,
   854 F. Supp. 2d 300 (E.D.N.Y. 2012) .............................................................17

*Patterson v. County of Oneida*,
   375 F.3d 206 (2d Cir. 2004)...........................................................................16

*Robinson v. Dibble*,
   613 Fed. Appx. 9 (2d Cir. 2015) ....................................................................15

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
   369 F.3d 113 (2d Cir. 2004)............................................................................7

**Cases**                                                        **Pages**

*School Bd. of Nassau County v. Arline*,
  480 U.S. 273 (1987)...................................................................9

*Serdans v. New York & Presbyt. Hosp.*,
  112 A.D.3d 449 (1st Dep't 2013) ...........................................18

*Shannon v. N.Y. City Transit Auth.*,
  332 F.3d 95 (2d Cir. 2003)...........................................6, 17, 21

*Siefken v. Village of Arlington Heights*,
  65 F.3d 664 (7th Cir. 1995) ...................................................13

*Sista v. CDC Ixis N. Am., Inc.*,
  445 F.3d 161 (2d Cir. 2006)......................................................6

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)................................................................16

*Texas Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981)...........................................................16, 17

*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999).......................................................8

*TWA v. Thurston*,
  469 U.S. 111 (1985)................................................................15

*United States v. City of New York*,
  717 F.3d 72 (2d Cir. 2013)........................................................4

*Vangas v. Montefiore Med. Ctr.*,
  6 F.Supp.3d 400 (S.D.N.Y. 2014) .........................................19

*Waddell v. Valley Forge Dental Assocs.*,
  276 F.3d 1275 (11th Cir. 2001) .........................................11, 12

*Warmsley v. MTA N.Y. City Transit Auth.*,
  308 F. Supp. 2d 114 (E.D.N.Y. 2004) ...................................14

*Whalley v. Reliance Group Holdings, Inc.*,
  No. 97-4018 (VM), 2001 U.S. Dist. LEXIS 427 (S.D.N.Y. Jan. 22, 2001) ...........................23

**Cases**                                                                                          **Pages**

*Zito v. Donahoe*,
    915 F. Supp. 2d 440 (S.D.N.Y. 2012)................................................................20, 21

**Statutes**

10 N.Y.C.R.R. § 405.3(b)(10) ......................................................................................17

29 C.F.R. § 1630.2(l)(3).................................................................................................5

29 C.F.R. § 1630.2(r) .................................................................................................9, 11

29 C.F.R. § 1630.9(e).....................................................................................................5

42 U.S.C. § 12112(a) ..................................................................................................5, 12

42 U.S.C. § 12113(a) ......................................................................................................8

42 U.S.C. § 12113(b) ......................................................................................................8

Fed. R. Civ. P. 56(c) ......................................................................................................4

N.Y.C. Admin. Code § 8-107(15)................................................................................18

Pl. Local Rule 56.1....................................................................................................12, 20

**Other Authorities**

July 6, 2012 Morbidity and Mortality Weekly Report, Consistency With Other
    Guidelines, at http://www.cdc.gov/mmwr/preview/mmwrhtml/rr6103a1.htm ......................10

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DOUGLAS M. STERNBERG,

                                            14 Civ. 1003 (PAC)
                           Plaintiff,

              -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

                           Defendant.
------------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

### PRELIMINARY STATEMENT

      Plaintiff Douglas Sternberg ("plaintiff"), who was formerly employed by defendant New York City Health and Hospitals Corporation ("defendant") as a dentist, alleges that defendant suspended and terminated his employment in 2012 on the basis of his Hepatitis C ("HCV") status.  Plaintiff has filed a motion for partial summary judgment on liability, claiming he was "wrongly regarded as" disabled under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("SHRL") and New York City Human Rights Law ("CHRL").  Plaintiff also claims he was denied a reasonable accommodation under the SHRL and CHRL.  Defendant respectfully submits this memorandum of law in opposition to plaintiff's motion.

      HCV is a contagious disease that – to quote plaintiff's deposition testimony – can cause plaintiff to "become critically ill and die of liver cancer."  Plaintiff's occupation magnifies the potential risk of transmitting HCV, as plaintiff regularly uses sharp dental instruments that draw patients' blood and can also draw plaintiff's own blood. Because of the ever-present risk of

transmitting HCV, as well as the potentially grave impact upon plaintiff's health, plaintiff owed a duty to his patients and colleagues to ensure that the HCV was treated and under control.

Plaintiff breached that duty.  For several years, plaintiff completely failed to treat and control his medical condition.  But plaintiff's irresponsible and negligent conduct finally caught up with him in 2012.  During plaintiff's annual medical examination at defendant's Occupational Health Service ("OHS") in July 2012, blood tests showed that plaintiff's viral load had skyrocketed.  Because plaintiff's viral load vastly exceeded the permissible level set forth in the Society for Healthcare Epidemiology of America ("SHEA") Guidelines, defendant determined that plaintiff could not be medically cleared to practice until plaintiff treated his HCV.  Soon after discussing his medical condition with doctors at OHS, plaintiff finally sought treatment from a specialist, years after plaintiff should have done so.

Defendant permitted plaintiff to take a leave of absence while plaintiff treated his HCV.  But plaintiff neglected to apprise defendant about his ongoing treatments, even though plaintiff understood that he needed to successfully complete treatment to regain his medical clearance.  After waiting nearly five months to receive documentation showing that plaintiff was treating his HCV, defendant terminated plaintiff's employment in December 2012 for failure to maintain his medical clearance.

Plaintiff attempts to excuse his careless conduct by claiming he is the victim of disability discrimination.  But plaintiff's motion merely demonstrates that plaintiff's claim is baseless.  Plaintiff's primary argument is that defendant's prior awareness of his HCV status barred defendant from suspending and terminating plaintiff's employment in 2012.  But plaintiff's ability to safely perform a dentist's job was not frozen in time. Because plaintiff's viral load had exploded due to years of neglect, plaintiff could no longer perform the essential

functions of the job in 2012.  Indeed, defendant reasonably determined that plaintiff posed a direct threat to his patients in 2012 pursuant to the SHEA Guidelines.

Plaintiff also fails to demonstrate that defendant was in any way motivated by discriminatory animus or intent.   The determinative factor in plaintiff's suspension and termination was plaintiff's *conduct* in failing to treat his HCV and then failing to provide any documentation of his treatment, not the underlying condition itself.  In addition, statements made by defendant's employees do not reflect any discriminatory animus, but instead demonstrate a legitimate, good-faith concern about plaintiff's failure to treat his HCV.  Plaintiff is also unable to demonstrate that defendant's actions were pretextual, and plaintiff's disagreement with defendant's actions does not establish intentional discrimination.

Plaintiff's reasonable accommodation claim is likewise deficient.   Plaintiff completely misstates the law by citing cases holding that a failure to engage in the interactive process violates the SHRL and CHRL.  These cases were recently overruled by the New York Court of Appeals, and it is deeply troubling that plaintiff is seeking judgment as a matter of law without even accurately representing the correct legal standard.

In addition, the proposed accommodations that plaintiff supposedly "could have" requested are unreasonable as a matter of law.  Plaintiff claims that he could have continued performing non-invasive dental procedures during his suspension.  But plaintiff testified that he did not have the energy to treat patients throughout this period, and excusing plaintiff from performing invasive dental procedures would eliminate an essential function of plaintiff's job. Plaintiff also claims that he could have been granted an additional month of leave after his December 2012 termination while he recovered from treatment.  Plaintiff's request for a post-

termination "second chance" is unavailing, and plaintiff's proposed leave would not have helped anyway because plaintiff relapsed by early March of 2013.

In sum, plaintiff does not come close to demonstrating his entitlement to judgment as a matter of law.  Plaintiff's motion should be denied.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Statement of Additional Material Facts as to Which There Exists a Genuine Issue to be Tried, dated December 31, 2015, for a statement of pertinent and material facts.

## ARGUMENT

Summary judgment is appropriate where the parties' submissions demonstrate "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating a summary judgment motion, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff faces a particularly formidable burden as the party bearing the ultimate burden of persuasion.  *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)("Summary judgment in favor of the party with the burden of persuasion…is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.").  Thus, "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's…motivation[.]"  *Id.* at 553, n.9.  *See also United States v. City of New York*, 717 F.3d 72, 90-91 (2d Cir. 2013)(reversing grant of summary judgment in plaintiffs' favor in Title VII disparate treatment case).

## POINT I

## PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HIS "REGARDED AS" CLAIM

### A.     The Applicable Legal Framework

Plaintiff claims that he was "wrongly regarded" as disabled under the ADA. Plaintiff's Memorandum of Law in Support of His Motion For Summary Judgment ("Memo.") at p. 13.   Although a plaintiff bringing a "regarded as" claim is no longer required to demonstrate that the impairment substantially limits a major life activity, the plaintiff must still "prove[] that a covered entity discriminated on the basis of disability[.]"   29 C.F.R. § 1630.2(l)(3).   In addition, an employer "is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong."   29 C.F.R. § 1630.9(e).

Plaintiff's "regarded as" claim is governed by the familiar burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).   To establish a *prima facie case*, plaintiff "must prove that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of[1] his disability or perceived disability."   *Kinneary v. City of New York*, 601 F.3d 151, 155-56 (2d Cir. 2010)(internal quotation marks omitted).   If plaintiff satisfies these elements, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion

---

[1] The 2008 amendments to the ADA slightly amended the language of Section 12112(a) from "because of" to "on the basis of." This change is immaterial for purposes of this motion.

that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

Defendant does not dispute that it is covered by the ADA and assumes, solely for purposes of this motion, that plaintiff was regarded as disabled. Plaintiff, however, fails to demonstrate that he was qualified to perform the essential functions of the job and that he suffered an adverse employment action on the basis of his disability.

**B.      Plaintiff Is Not a "Qualified Individual"**

**1.      Plaintiff Became Unable to Perform the Essential Functions of the Job**

Plaintiff argues that he was qualified to perform the essential functions of the job because defendant was aware of his HCV status for years and medically cleared plaintiff to work until 2012. Memo. at pp. 17-19. Thus, plaintiff contends that his ability to perform a dentist's job duties prior to 2012 barred defendant from suspending and terminating plaintiff's employment in 2012. Plaintiff assumes that his ability to perform the essential functions of the job is fixed in time, but this assumption is both simplistic and unsupported by the record.

Prior to 2012, defendant cleared plaintiff to work with the understanding that plaintiff's HCV was treated and under control. But in 2012, defendant learned that was not the case, as plaintiff's viral load had exploded due to plaintiff's prolonged failure to treat his HCV. It was at *that* point when plaintiff was deemed no longer qualified to perform the essential functions of the job. Plaintiff's past medical clearances are irrelevant to his ability to perform the job in 2012. *See Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)(because plaintiff was not qualified to perform the job at time of termination, "it cannot matter that he passed a…test sometime earlier"); *Mobley v. Madison Square Garden LP*, No. 11-8290 (DAB), 2012 U.S. Dist. LEXIS 85467, at *9 (S.D.N.Y. June 14, 2012)(plaintiff's past

medical clearances did not make plaintiff qualified as of date of termination because plaintiff had only "show[n] that he was qualified in the past").

Because plaintiff misstates the "essential functions of the job" analysis, plaintiff's judicial estoppel argument is meritless.  Plaintiff claims that defendant "successfully argued" to the City of New York's Workers Compensation Board in 2001 that plaintiff's HCV status did not prevent him from performing his job, and is therefore estopped from arguing otherwise. Memo. at p. 18.  Plaintiff has failed to proffer any admissible evidence demonstrating what defendant "argued" to the Board in 2001, and plaintiff's purported recollection at his 2015 deposition is wholly insufficient.

Even assuming that plaintiff's account is correct, defendant's determination that plaintiff was qualified to work as a dentist *in 2001* did not preclude defendant from reasonably determining that plaintiff was unqualified more than a decade later *in 2012*, after defendant learned of plaintiff's high viral load due to years of neglect.  *See Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004)(refusing to apply judicial estoppel based upon "evolution of events"); *see also  Adm'r v. City of Chicago*, 174 Fed. Appx. 342, 347-48 (7th Cir. 2006)(judicial estoppel inapplicable because employer's prior statement to EEOC was made before employer was informed plaintiff could no longer perform his job).

Plaintiff also complains that he had no knowledge of HHC's Operating Procedure 20-19 ("OP 20-19") at the time of his suspension in July 2012, and that the SHEA Guidelines were incorporated into OP 20-19 in August 2012, six weeks after his suspension.  Memo. at 18. But plaintiff's plea of ignorance is unavailing.  It is undisputed that plaintiff reviewed the SHEA Guidelines with Dr. Carey in July 2012.  Exhibit 1 at 100:9-20.  Plaintiff was subsequently provided several months to lower his viral load in accordance with the Guidelines, but failed to

provide defendant *any* documentation of his treatment through December 2012.   Because plaintiff was provided an ample opportunity to comply with the Guidelines prior to being terminated in December 2012, plaintiff's supposed lack of knowledge at the time of his July 2012 suspension is immaterial.

Plaintiff complains, however, that there is no way to determine whether his viral load exceeded the 10,000 GE/ml barrier set forth in the SHEA Guidelines because his viral load was measured in a different unit.   Memo. at p. 18.   Given that plaintiff is the moving party, this complaint merely reinforces why plaintiff is not entitled to judgment as a matter of law.   Plaintiff is also incorrect, as Dr. Redwood testified that plaintiff's viral load of 3.26 million IU/ml was the equivalent of more than 8 million GE/ml.   Exhibit 6 at 50:21-51:4; 62:23-63:4.[2]

### 2.    Plaintiff Posed a Direct Threat to the Health and Safety of Others

The ADA permits employers to require that employees satisfy certain "qualification standards."   42 U.S.C. § 12113(a).   One such qualification standard is the "requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace."   42 U.S.C. § 12113(b).   Plaintiff's brief is conspicuously silent on the direct threat issue, and plaintiff should not be permitted to belatedly address this pivotal issue for the first time on reply.   *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

In any event, defendant reasonably determined that plaintiff posed a direct threat to the health and safety of his patients in 2012 due to plaintiff's dangerously elevated viral load. First, defendant conducted an "an individualized assessment of the individual's present ability to

---

[2] In addition, plaintiff asserts that he remained able to perform the essential functions of the job in 2012 because OP 20-19 does not totally prohibit infected healthcare workers from treating patients.   Memo. at pp. 18-19.   This assertion is tied to plaintiff's argument that he should have been permitted to perform non-invasive dental procedures as a reasonable accommodation, and is discussed in more detail below.

safely perform the essential functions of the job."  29 C.F.R. § 1630.2(r).  Dr. Carey examined plaintiff three times in July 2012, and determined that plaintiff should not be medically cleared to practice due to his viral load of 3.26 million.  Exhibit 7.  In addition, Dr. Redwood determined that plaintiff's high viral load suggested an exacerbation of plaintiff's liver disease.  Exhibit 6 at 51:25-52:3.  Defendant's individualized assessment of plaintiff in 2012 was based upon the "legitimate concern[] of…avoiding exposing others to significant health and safety risks." *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 (1987).

In addition, defendant's individualized assessment was "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence."  29 C.F.R. § 1630.2(r).  Defendant relied upon the SHEA Guidelines published in 2010, which included contributions from infectious disease experts at the National Institute of Health and major research universities.  Exhibit 3.  The SHEA Guidelines recommend that an HCV-infected healthcare provider with a viral load exceeding 10,000 GE/ml should not perform invasive procedures such as oral surgery, which constituted an essential function of plaintiff's job.  Exhibit 3 at D0443.  Because plaintiff's viral load vastly exceeded this limit, defendant reasonably determined that it was unsafe for plaintiff to continue working until he successfully treated his HCV.

Plaintiff attempts to challenge the veracity of the SHEA Guidelines based upon the made-to-order "opinion" of his expert, Dr. David Bernstein.  According to Dr. Bernstein, the SHEA Guidelines are an "outlier" because the Centers for Disease Control and Prevention's ("CDC") guidelines do not impose any restrictions on healthcare workers infected with HCV.  Pl. Exhibit R, at pp. 3-4.  Dr. Bernstein also claims there is no evidence showing a correlation

between viral load and the risk of transmitting HCV.  *Id.* at p. 5.  Yet Dr. Bernstein's "opinion" fails to demonstrate that plaintiff did not pose a direct threat.

Defendant is not mandated to adhere solely to the CDC Guidelines, and a jury could find that it was reasonable for defendant to rely upon the SHEA Guidelines, which included contributions from leading infectious disease experts.  *See Bragdon v. Abbott*, 524 U.S. 624, 650 (1999)(noting that CDC guidelines are not "conclusive," and that a "health care professional who disagrees with the prevailing medical consensus may refute it by citing a credible scientific basis for deviating from the accepted norm"); *Michael v. City of Troy Police Dep't*, 2015 U.S. App. LEXIS 21546, at *6 (6th Cir. Dec. 14, 2015)(in determining whether employee poses direct threat, "[a] medical opinion may conflict with other medical opinions and yet be objectively reasonable").  Dr. Bernstein's assertion that the SHEA Guidelines are an "outlier" is particularly dubious given that the CDC's Morbidity and Mortality Weekly Report has cited to the SHEA Guidelines with nary a word of criticism.  *See* July 6, 2012 Morbidity and Mortality Weekly Report, Consistency With Other Guidelines, at http://www.cdc.gov/mmwr/preview/mmwrhtml/rr6103a1.htm

In addition, Dr. Bernstein's "opinion" that viral load does not correlate with risk of transmission is far from ironclad.  Dr. Bernstein hedges his statement by conceding that "the role of viral load in the transmission of HCV following any known risk exposure remains unknown[.]"  Pl. Exhibit R at p. 5.  Such waffling by plaintiff's own expert further demonstrates why plaintiff is not entitled to judgment as a matter of law.  It is entirely reasonable for the SHEA Guidelines to adopt a precautionary approach given the lack of certainty and the catastrophic consequences of transmission.  In fact, the SHEA Guidelines are *less* restrictive than

the United Kingdom's guidelines involving healthcare workers infected with HCV.  Exhibit 3 at D0455.

Defendant's determination that plaintiff posed a direct threat is also supported by the four factors in the EEOC's regulation: "(1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm."   29 C.F.R. § 1630.2(r).  Plaintiff cannot dispute that the risk of transmission will exist for the rest of his life, nor can plaintiff dispute the severity of transmitting HCV.  Indeed, plaintiff's deposition testimony vividly demonstrates the risk, as plaintiff admitted he could "become critically ill and die of liver cancer" because of his HCV infection.  Exhibit 1 at 60:16-18.

In addition, the likelihood and imminence of potential harm strongly support defendant's determination.  Courts have consistently held that healthcare workers carrying an infectious disease can pose a direct threat even if the likelihood of transmission is small.  *See Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1284 (11th Cir. 2001)(dental hygienist); *Estate of Mauro by & Through Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 407 (6th Cir. 1998)(surgical technician); *Doe v. University of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1265-66 (4th Cir. 1995)(neurosurgical resident); *Bradley v. University of Texas M.D. Anderson Cancer Center*, 3 F.3d 922, 924-24 (5th Cir. 1993)(surgical assistant).  *See also Donahue v. CONRAIL*, 224 F.3d 226, 231 (3d Cir. 2000)("If the threatened harm is grievous…even a small risk may be 'significant.'").

*Waddell*, which involved an HIV-infected dental hygienist, is particularly instructive.  The plaintiff was determined to pose a direct threat because "[t]he combination of sharp instruments used by the hygienist and a patient's blood commonly being present indicate

that the hygienist could cut or prick himself with such an instrument, pierce the skin of his protective glove, and transfer his blood into the patient's mouth, where it would come into contact with an oral cut or abrasion." 276 F.3d at 1282. Even if the likelihood of such transmission was small, the fatal consequences supported the direct threat determination. *Id.* at 1284.

In plaintiff's case, this scenario is by no means hypothetical. Plaintiff testified that while treating a patient in 2001 – several years after he contracted HCV - plaintiff stuck himself with a needle and drew his blood even though plaintiff was "double gloving." Exhibit 1 at 71:20-72:23. This incident demonstrates that no amount of precaution can prevent an accident with potentially fatal results. Based upon this risk, as well as plaintiff's dangerously elevated viral load in 2012, defendant's determination that plaintiff posed a direct threat was reasonable.[3]

## C. Plaintiff Cannot Demonstrate That Defendant Was Motivated by Discriminatory Intent

### 1. Plaintiff's Suspension and Termination Were Made On The Basis of Plaintiff's Conduct, Not His Underlying Medical Condition

Plaintiff bears the burden of proving that he was subjected to intentional discrimination "on the basis of" his disability. 42 U.S.C. § 12112(a). But plaintiff's repeated assertion that defendant was aware of his HCV status works against him. Plaintiff's suspension and termination were *not* caused by plaintiff's HCV precisely because defendant was already aware of plaintiff's status. The determinative factor was instead plaintiff's *conduct* in failing to

---

[3] Plaintiff's reply may cite to an email by Dilcia Ortega that summarized a January 3, 2013 discussion with Dr. Redwood and Dr. Bailey concerning plaintiff's potential risk to patients. Pl. Exhibit Y. To the extent plaintiff may use this document to argue he could have safely treated patients with double gloving, plaintiff's own deposition testimony demonstrates that double gloving *cannot* prevent a needle stick injury. In addition, plaintiff's Rule 56.1 Statement acknowledges that Dr. Bailey disagreed with the statements attributed to him in the email. *See* Pl. Local Rule 56.1 Statement ¶¶74-75. Dr. Redwood similarly disagreed with the statements attributed to him. *See* Def. Exhibit 6 at 83:19-23.

treat his HCV for years, which caused plaintiff's viral load to reach a dangerously unsafe level by 2012.  Because of plaintiff's prolonged failure to treat his condition, plaintiff could no longer be medically cleared to practice.  Even after seeing a specialist beginning in July 2012, plaintiff still failed to provide defendant any documentation despite being granted nearly five months of leave.  In short, defendant's decisions were made "on the basis" of plaintiff's irresponsible conduct, not the underlying medical condition.

It is well-settled that an individual who fails to treat and control a medical condition does not incur an adverse employment action "because of" the disability.  In *Burroughs v. City of Springfield*, 163 F.3d 505 (8th Cir. 1999), a police officer with diabetes assured his employer at the time of hiring that his condition was under control.  The employer's subsequent decision to remove the officer from active duty after he incurred two diabetic episodes was not made "because of" disability, but was instead due to the officer's failure to "consistently control[] his disease as he had represented at the outset."  *Id.* at 508.  *See also Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995)(plaintiff was not terminated because of his disability where "the more immediate cause of the incident leading to his termination was his failure to monitor his condition").  These cases demonstrate that an individual cannot use a medical condition to ward off any adverse employment action, particularly when the action is made due to the individual's failure to control the condition.

The Second Circuit has held in analogous cases that an employer may discipline a disabled employee who engages in workplace misconduct, even if the misconduct is related to the disability.  *See McElwee v. County of Orange*, 700 F.3d 635, 644 (2d Cir. 2012)(plaintiff's dismissal from volunteer program based upon his "inappropriate behavior" was permissible "even if the behavior resulted from his disability"); *see also Krasner v. City of New York*, 580

13

Fed. Appx. 1, 3 (2d Cir. 2014).  These cases bolster defendant's argument that plaintiff's HCV status cannot immunize plaintiff from the consequences of his conduct.

### 2. Statements Made by Defendant's Employees Do Not Demonstrate Discriminatory Animus

Plaintiff's motion focuses heavily upon statements made by defendant's employees commenting upon plaintiff's medical condition, as well as the letters plaintiff received in July and December of 2012.  Plaintiff claims that these comments and documents constitute "direct evidence" of disability discrimination entitling him to judgment as a matter of law, or alternatively support an inference that plaintiff's suspension and termination were made on the basis of his HCV.  Memo. at pp. 13-15, 19-20.

But plaintiff fails to acknowledge that disability discrimination cases are fundamentally distinct from other employment discrimination cases.   Unlike race, national origin, or gender, disability frequently affects an individual's ability to successfully perform the job.  That is precisely why a threshold issue in any ADA case is whether the individual is qualified to perform the essential functions of the job.[4]  Thus, a careful distinction must be made between statements reflecting an employer's legitimate – and entirely lawful - belief that an employee is not a "qualified individual" under the ADA, and statements that merely reflect discriminatory animus.  Plaintiff fails to make this critical distinction.[5]

---

[4] Although Title VII cases also involve an analysis of the employee's qualifications at the *prima facie* stage, this analysis does *not* focus upon whether the employee's protected category affects the employee's qualifications.

[5] The one case plaintiff cites that found "direct evidence" of disability discrimination, *Warmsley v. MTA N.Y. City Transit Auth.*, 308 F. Supp. 2d 114 (E.D.N.Y. 2004), is easily distinguishable. *Warmsley* involved an agency policy that was discriminatory on its face because the policy did not require the employer to conduct an individualized assessment.  But in this case, plaintiff was subject to an individualized assessment. Even if plaintiff was able to muster "direct evidence" of disability discrimination – which he cannot - plaintiff's assertion that he is "entitled to summary judgment" (Memo. at p. 13) is incorrect.  Defendant may still rebut such evidence based upon

The statements and documents plaintiff cites reflect defendant's good-faith belief that plaintiff could no longer safely perform the essential functions of the job because of his high viral load. These statements do *not* demonstrate that defendant was in any way motivated by discriminatory animus or ill-will against individuals carrying HCV. *See Robinson v. Dibble*, 613 Fed. Appx. 9, 13 (2d Cir. 2015)(ADA claim failed where plaintiff did not "offer any evidence of discriminatory animus on the part of those who were responsible for her termination"). Defendant's employees should not be penalized for expressing their legitimate concerns about plaintiff's failure to treat his HCV.

Indeed, plaintiff's expansive definition of "discrimination" would undermine the purpose of the ADA and similar statutes. These statutes envision a dialogue between the employee and employer for the purpose of accommodating the employee's disability. But if *any* remark or document touching upon the employee's medical condition constitutes "discrimination," employers would have a significant disincentive to engage in this dialogue. Because plaintiff's argument would ultimately hurt the individuals who stand to benefit from the ADA, it should be rejected.

**D.     Defendant's Legitimate Reasons For Plaintiff's Suspension and Termination Were Not Pretextual**

Even if plaintiff could establish a *prima facie* case, he is unable to demonstrate that defendant's legitimate, nondiscriminatory reasons for his suspension and termination are a pretext for intentional discrimination. Plaintiff attacks the persuasiveness of defendant's justification for these adverse actions, claiming that defendant's justification "is nowhere near

---

the direct threat affirmative defense. *See TWA v. Thurston*, 469 U.S. 111, 122 (1985)(analyzing employer's affirmative defenses after finding direct evidence of discrimination).

sufficient to carry Defendant's burden[.]"  Memo. at p. 21.  But plaintiff misstates the burden imposed under the *McDonnell Douglas* framework.

In *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981), the Supreme Court held that the defendant does not bear the burden of persuasion, and need only articulate a legitimate, nondiscriminatory basis for its actions.  The Court reiterated this principle in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993), holding that the defendant's burden of production "can involve no credibility assessment."  Plaintiff's attempt to shift the burden of persuasion onto defendant is directly contrary to *Burdine* and *Hicks*.  The letters issued to plaintiff in 2012 explaining the reasons for plaintiff's suspension and termination are more than sufficient to satisfy defendant's minimal burden of production.

Plaintiff bears the ultimate burden of persuasion "to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)(quoting *Burdine*, 450 U.S. at 253).  Because plaintiff is the party bearing the ultimate burden of persuasion, plaintiff is not entitled to judgment as a matter of law if there is an "issue" regarding defendant's motivation.  *Hunt*, 526 U.S. at 553, n.9

Plaintiff falls well short of satisfying his ultimate burden of persuasion.  First, plaintiff contends that he had worked at HHC for decades while infected with HCV "with no issues," and that "nothing had changed" at the time of his suspension and termination.  Memo. at p. 21.  This statement not only fails to establish pretext, but is flatly incorrect.  What "changed" in 2012 was plaintiff's high viral load after years of neglect, which far exceeded the SHEA Guidelines threshold.  Even plaintiff's treating physician, Dr. Lipsky, acknowledged in July 2012 that plaintiff had a "high viral load."  Exhibit 9, July 19, 2012 Consultation Report.

16

Plaintiff also rehashes his argument that the revised OP 20-19 was not established until after his suspension, and that OP 20-19 does not "dictate" that he be suspended or terminated based on his viral load.  Memo. at p. 21.  Plaintiff appears to suggest that defendant failed to follow its own policies.  But plaintiff "must come forward with some evidence that [defendant's] purported failure to follow its Policies was due to unlawful discrimination, not merely that [defendant's] decision was unfair or unjustified." *Nurse v. Lutheran Med. Ctr.*, 854 F. Supp. 2d 300, 319 (E.D.N.Y. 2012).

Plaintiff has failed to adduce any evidence that Dr. Carey, Dr. Redwood, or any other HHC employee was motivated by discriminatory animus in applying OP 20-19 and the SHEA Guidelines.  Defendant's reliance upon these guidelines and procedures was based upon a reasonable, good-faith belief that plaintiff could not be medically cleared to practice because of his high viral load.  *Doe*, 50 F.3d at 1266 ("there is nothing in the record to indicate that [defendant] acted with anything other than the best interests of its patients and [plaintiff] at heart").

In fact, defendant's concerns were compelled by state law, which requires defendant to "ensure that no person shall assume his/her duties unless he/she is free from a health impairment which is of potential risk to the patient or which might interfere with the performance of his/her duties[.]" 10 N.Y.C.R.R. § 405.3(b)(10).  *Shannon*, 332 F.3d at 103 ("[e]mployment decisions may be made in light of [the] public interest" based upon "statutory responsibility").  Even if plaintiff subjectively believed that defendant's actions were "unfair or unjustified," that in no way demonstrates discriminatory animus.

Finally, plaintiff complains that he was never instructed to return to OHS, and was not given any information about how to return to work.  Memo. at p. 21.  Plaintiff's

17

purported lack of understanding is unconvincing given that plaintiff had been annually examined at OHS for several years, and discussed his situation with Dr. Carey at OHS in July 2012.  In any event, plaintiff's complaint is completely irrelevant to the "ultimate question" of whether "defendant intentionally discriminated against the plaintiff."  *Burdine*, 450 U.S. at 253.

In sum, plaintiff has failed to present any evidence that he was subjected to intentional discrimination on the basis of his disability, much less demonstrate that he is entitled to judgment as a matter of law.

**E.   Plaintiff Fails To Demonstrate That He Was Subjected to Intentional Discrimination Under the SHRL and CHRL**

Plaintiff also fails to demonstrate that he is entitled to judgment as a matter of law on his SHRL and CHRL claims.  The legal standard applicable to plaintiff's SHRL claim is identical to the ADA.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006).  Plaintiff's "regarded as" claim under the SHRL is deficient for the reasons noted above.  Although CHRL claims are ordinarily subject to an "independent analysis," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), plaintiff appears to concede that his "regarded as" CHRL claim mirrors the ADA.  Memo. at p. 16, n.3.  *See McDonnell v. Schindler Elevator Corp.*, 618 Fed. Appx. 697, at *7 (2d Cir. 2015)(refusing to independently analyze CHRL claim where plaintiff "offers no such independent analysis in his briefs").

Even if plaintiff had not waived this argument, he is not entitled to judgment as a matter of law on his CHRL claim.  For the reasons noted above, plaintiff became unable to perform the "essential requisites of the job" in 2012.  N.Y.C. Admin. Code § 8-107(15)(b).  In addition, plaintiff has "failed to point to evidence raising an inference of discriminatory animus" on the basis of disability.  *Serdans v. New York & Presbyt. Hosp.*, 112 A.D.3d 449, 450 (1st Dep't 2013).  Because plaintiff has failed to demonstrate that discrimination played any role in

18

defendant's actions, plaintiff's CHRL claim fails as well.  *Krasner*, 580 Fed. Appx. at 3, n.2 (affirming dismissal of CHRL disability discrimination claim); *Howard v. City of New York*, 62 F. Supp. 3d 312, 323 (S.D.N.Y. 2014)(dismissing CHRL "regarded as" claim).

## POINT II

### PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HIS REASONABLE ACCOMMODATION CLAIM

**A.      Plaintiff Misstates the Applicable Legal Standard**

Although plaintiff's "regarded as" claim is brought under the ADA, SHRL and CHRL, plaintiff has decided to bring a reasonable accommodation claim solely under the SHRL and CHRL.  Plaintiff's strategic decision is apparently based upon his belief that an employer's failure to engage in the interactive process constitutes an independent violation of these statutes. Memo. at pp. 22-23.  Yet plaintiff fails to acknowledge that the cases he cites were *overruled* by the New York Court of Appeals in *Jacobsen v. New York City Health & Hosps. Corp.*, 22 N.Y.3d 824 (2014).

In *Jacobson*, the Court of Appeals "reject[ed]" case law "implying that a good faith interactive process is an independent element of the disability discrimination analysis under either the State or City HRL which, if lacking, automatically compels a grant of summary judgment to the employee[.]"  22 N.Y.3d at 838.  The court clarified that "the employer's decision to engage in or forgo an interactive process is but one factor to be considered in deciding whether a reasonable accommodation was available for the employee's disability at the time the employee sought accommodation."  *Id.*[6]  It is simply astounding that plaintiff is asking

---

[6] Plaintiff relies heavily upon *Vangas v. Montefiore Med. Ctr.*, 6 F.Supp.3d 400 (S.D.N.Y. 2014), but *Vangas* was decided on March 20, 2014, a week before the *Jacobsen* decision was issued.

this Court to grant him judgment as a matter of law when plaintiff fails to even articulate the correct legal standard.

Plaintiff misstates not only the applicable law, but also the facts.  Plaintiff contends that defendant failed to engage in the interactive process because he was not adequately informed about the process for returning to duty.   Memo. at pp. 23-24.  As noted above, plaintiff's argument defies belief given that plaintiff appeared annually at OHS for several years for his medical examination.  In addition, plaintiff understood that he needed to see a specialist to lower his viral load following his examination by Dr. Carey at OHS.  *See* Pl. Rule 56.1 Statement ¶¶56, 77.  Plaintiff's contention that he was ignorant about the process for regaining his medical clearance is simply not credible in light of plaintiff's own testimony.

Plaintiff's emails between July and December 2012 further undermine plaintiff's argument that defendant was somehow at fault.  Despite the fact that plaintiff began treatment with Dr. Lipsky in July 2012, not *once* did plaintiff apprise either defendant or his own union about the status of his treatments with Dr. Lipsky.  *See Zito v. Donahoe*, 915 F. Supp. 2d 440, 447-48 (S.D.N.Y. 2012)(plaintiff "was responsible for the breakdown in the interactive process" because plaintiff failed "to provide documentation in support of his request for accommodation, even though he was given ample time to acquire that documentation").  In fact, plaintiff's emails during his suspension demonstrate that plaintiff was fixated on ensuring that he was paid while out on leave.  *See* Pl. Exhibits M, N, O, Q.  Plaintiff's attempt to absolve himself of any responsibility is unworthy of credence given this record.

**B.    Plaintiff's Proposed Accommodations Are Unreasonable and Would Impose an Undue Hardship Upon Defendant**

Because plaintiff failed to provide defendant any documentation concerning his treatments with Dr. Lipsky, he cannot maintain that defendant failed to accommodate his

disability.  *Zito*, 915 F.Supp.2d at 448.  But plaintiff's claim is deficient in any case.  Defendant is required to provide a reasonable accommodation only if the accommodation would permit plaintiff to perform the essential functions of the job.  *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  In making this determination, "[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998).  In addition, "[a] reasonable accommodation can never involve the elimination of an essential function of a job."  *Shannon*, 332 F.3d at 100.

Plaintiff's failure-to-accommodate claim is deficient for several reasons.  First, plaintiff fails to acknowledge that defendant *did* provide plaintiff an accommodation.  Yvette Villenueva, the director of Human Resources, testified that plaintiff was permitted to take leave in July 2012 so that plaintiff could treat his HCV in order to be medically cleared.  Exhibit 11 at 13:7-19; 45:21-46:4.  Yet plaintiff failed to give any indication that he was being treated for his high viral load even after being granted nearly five months of leave.

Plaintiff nonetheless claims that defendant should have gone farther.  Although plaintiff tacitly concedes that he never actually requested an accommodation after July 2012, he claims there were "multiple" accommodations he hypothetically "could have requested."  Memo. at p. 24.  Plaintiff's proposed accommodations would have been unreasonable even if plaintiff had actually requested them.

Plaintiff claims that during his suspension, he could have performed non-invasive Category I and II level tasks under the SHEA Guidelines until his viral load went down.  Memo. at p. 24.  But plaintiff candidly admitted at his deposition that he did not have the energy to see patients during this time period because of the effects of his treatments with Dr. Lipsky.  Exhibit

1 at 168:2-7.  Plaintiff's assumption that he could have continued seeing patients for Category I and II tasks after July 2012 is belied by his own deposition testimony.

Even if plaintiff had been physically capable of seeing patients during this time period, plaintiff's proposed accommodation would entail the elimination of an essential function of his job.  Plaintiff claims that less than 10% of his tasks involved the "Category III" invasive procedures that the SHEA Guidelines restricted him from performing.   Memo. at p. 23. Defendant strongly disagrees with this characterization, as plaintiff testified that 25% of his practice consisted of exodontics, which involved extraction of teeth, while another 10% of his practice consisted of endodontics, which involved root canals.  Exhibit 1 at 81:14-16; 82:14-16.

But regardless of plaintiff's breakdown of his job tasks, excusing plaintiff from performing invasive dental procedures would have eliminated an essential function of the job. The Position Description for an Attending Dentist clearly states that a dentist "[c]leans, restores, extracts and replaces teeth, using rotary and hand instruments, dental appliances, medications, and surgical implements."  Pl. Exhibit C.  It was reasonable for defendant to determine that plaintiff could not be excused from performing tasks that were part-and-parcel of his job as a dentist.   Because defendant's judgment concerning essential job functions is afforded "considerable deference," *D'Amico*, 132 F.3d at 151, plaintiff is not entitled to second-guess this judgment.  *See Davis v. New York City Health & Hosps. Corp.*, 508 Fed. Appx. 26, 29 (2d Cir. 2013)(rejecting plaintiff's argument that direct patient care was only a "marginal responsibility" of a head nurse, and noting that "district court properly deferred to the employer's judgment that these functions were essential"); *Mulloy v. Acushnet Co.*, 460 F.3d 141, 152-53 (1st Cir. 2006)(rejecting plaintiff's claim that job function comprising 10% of his tasks was marginal).

Plaintiff further claims that his proposed accommodation was reasonable because other employees were able to cover plaintiff's patients during his suspension. Memo. at p. 24. But whether or not defendant managed to find other dentists to cover plaintiff's patients is completely irrelevant. The pertinent question is whether relieving plaintiff from performing certain job tasks would redefine plaintiff's job. *Bradley*, 3 F.3d at 925 (proposed accommodation that would relieve surgical assistant from being present at operations "would require using another assistant to substitute in for the functions [plaintiff] could not perform, requiring even more redefinition of essential roles").

Plaintiff's second proposed accommodation is likewise unreasonable. Plaintiff claims that after his December 2012 termination, he could have been granted "4-5 weeks of leave" to finish recovering from his treatment. Memo. at pp. 24-25. Because plaintiff never informed defendant about his treatments with Dr. Lipsky in the first place, it is absurd for plaintiff to argue that he should have been granted additional time to complete the treatment.

Furthermore, courts have been wary of such "second chance" accommodation requests after termination. *McElwee*, 700 F.3d at 641 ("A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law."); *Whalley v. Reliance Group Holdings, Inc.*, No. 97-4018 (VM), 2001 U.S. Dist. LEXIS 427, at *27 (S.D.N.Y. Jan. 22, 2001)("seeking another chance is not a substitute for a proper request for an accommodation"). Defendant already provided plaintiff nearly five months to treat his HCV, and was under no obligation to give plaintiff a second opportunity even after his termination.

Plaintiff's proposed accommodation is also unreasonable because plaintiff would have been unable to perform the essential functions of the job even with this extended leave. *See Graves v. Finch Pruyn & Co.*, 353 Fed. Appx. 558, 560 (2d Cir. 2009)(plaintiff proposing leave

of absence must show he could perform essential functions "at or around the time at which it is sought"). Although plaintiff completed his treatments with Dr. Lipsky in January 2013, plaintiff had already "relapsed" by early March. Exhibit 14, March 7, 2013 Treatment Notes. Thus, an additional five weeks of leave would not have enabled plaintiff to perform his job duties anyway. *D'Amico*, 132 F.3d at 151 ("likelihood of relapse is relevant to the determination of whether an individual is otherwise qualified").

Because plaintiff's proposed accommodations are unreasonable as a matter of law, they would impose an undue hardship upon defendant. *Borkowski*, 63 F.3d at 138 ("in practice meeting the burden of non-persuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing"). As with the direct threat defense, plaintiff fails to discuss the undue hardship defense, and plaintiff should not be permitted to belatedly address this issue on reply. Accordingly, plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law on his reasonable accommodation claim.

## **CONCLUSION**

For the foregoing reasons, the Court should deny plaintiff's motion for partial summary judgment on liability, and grant defendant costs, disbursements and such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              December 31, 2015

ZACHARY W. CARTER
Corporation Counsel of the
　City of New York
Attorney for Defendant
100 Church Street, Room 2-115
New York, New York 10007
(212) 356-2467
yrubinst@law.nyc.gov


By: _____/s/_____
　　　　Yuval Rubinstein
　　　　Assistant Corporation Counsel



PAUL F. MARKS,
YUVAL RUBINSTEIN,
　　　Of Counsel.